IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| EDWARD S. DIGGES, JR. | § | |
| VS. | § | CIVIL ACTION NO. 4:13cv569 |
| DIRECTOR, TDCJ-CID | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Edward S. Digges, Jr., an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

<u>Prior Proceedings</u>

Following a jury trial in the 219th District Court of Collin County, Texas, petitioner was convicted of securities fraud and sentenced to 99 years of imprisonment. The conviction was affirmed by the Texas Court of Appeals for the Fifth District. *Digges v. State*, 2012 WL 2444543 (Tex.App.–Dallas 2012). The Texas Court of Criminal Appeals refused a petition for discretionary review filed by petitioner. *Digges v. State*, PDR No. 1020-12. The United States Supreme Court denied a petition for writ of *certiorari*. *Digges v. Texas*, 133 S. Ct. 2801. Petitioner did not file a state application for writ of habeas corpus.

<u>Grounds for Review</u>

Petitioner asserts the following grounds for review: (1) his prosecution violated the Commerce Clause of the Constitution; (2) the state court lacked territorial jurisdiction over his offense because it was not established that he was a seller of a security within Texas and (3) he is actually innocent.

<u>Factual Background</u>

In its opinion, the intermediate appellate court described the factual background of this matter as follows:

> Appellant was an attorney who surrendered his law license in 1989 when he was sentenced to thirty months's imprisonment for mail fraud. According to appellant, he was

an adjunct faculty member at the University of Maryland School of Law teaching federal jurisdiction, an adjunct faculty member at the University of Baltimore School of Law teaching civil procedure, and an adjunct faculty member at the John Hopkins School of Business teaching business law.  Following his incarceration in federal prison, appellant was unable to secure a real estate license and developed his idea of starting a company in the telecommunications area.

In November, 2008, appellant was indicted on charges of securities fraud in an aggregate amount of $100,000 or more.  The indictment included sixteen paragraphs alleging, among other things, that appellant committed fraud in connection with the sales and offers of securities by intentionally failing to disclose the following material facts: (1) appellant, an attorney, had been indicted in 1989 on mail fraud charges stemming from his (a) billing a client for the legal services of attorneys that never worked on the client's behalf and (b) billing for legal services that no attorney at appellant's law firm ever [performed], for which appellant had been convicted of mail fraud and aiding and abetting in 1990 and sentenced to thirty months' imprisonment; (2) in 1989, appellant had judgment entered against him in federal district court in the amount of $3,124,414.93 plus $510,386.99 in prejudgment interest, and the judgment remained due and owing; (3) appellant was involved in and controlled the Millennium Terminal Investment Program and misrepresented material information and falsely portrayed that individuals who had only nominal roles in the operation of the program were managing the program; (4) the funds invested by investors in the Millennium Terminal Investment Program would be used to pay appellant's and his family's personal expenses; (5) in 2003, the Pennsylvania Securities Commission had issued a cease and desist order against predecessor corporations offering the Millennium Terminal Investment Program for violations of the Pennsylvania Securities Act; (6) in 2003, the Securities Division of the office of the Maryland Attorney General issued an order to the predecessor corporations to cease and desist from offering and selling unregistered securities, acting as an unregistered broker-dealer or agent, and engaging in material misrepresentations in connection with the offer or sales of securities in Maryland; (7) in 2004, the Ohio Department of Commerce ordered the predecessor corporations to cease and desist from committing further violations of the Ohio Securities Act; (8) the "reserve fund" was not maintained by the Millennium Terminal Investment Program; (9) the fund for repurchasing the terminals was not maintained by the Millennium Terminal Investment Program; (10) the terminals placed with merchants were not generating sufficient funds to meet the monthly payments to investors; (11) the majority of the lease payments to investors were not paid from revenue earned from the placement of terminals with merchants, but with funds received from other investors; (12) a business model for the Millennium Terminal Investment Program projected that it would not generate a profit for the first eighteen months of operation; (13) prior investors in the Millennium Terminal Investment Program had not received monthly payments in accordance with their contracts; and (14) in June 2005, a search and seizure warrant was issued in Bexar County, Texas, and served on a Millennium salesman, and records were seized relating to violations of the Texas Securities Act.

At trial, James Bowling, one of appellant's salesmen, testified appellant hired salespeople around the county to sell his "Millennium Terminal" program.  Several of appellant's salespeople worked in Texas, and some made sales in Collin County.  Under the Millennium Terminal program, an investor purchased a credit card terminal for $5000 and leased the terminal back to appellant's company for $50 a month for five years.  Appellant's company was to place the terminals with businesses, and the transaction fees from the terminals were to be used to pay the investors.  Appellant's

company was also supposed to set aside a reserve fund so that investors could be paid if terminals underperformed or had technical problems and another fund so that the company could buy back the terminals for $5000 at the end of the contract period. In order to operate the program, appellant used a network of twenty-five companies under an umbrella corporation, Televest Communications.

James Silver, the attorney appointed by the SEC as receiver in the case involving appellant, testified his duties included taking on the responsibilities the company's officers would have otherwise handled, investigating what had occurred, operating the companies if feasible, and liquidating the companies' assets. In general, Silver's goal was to try to maximize the return to the people defrauded or harmed by violations of securities law. Silver determined that approximately $11 million was raised by appellant's companies in Texas, and a disproportionate number of the investors were elderly. Silver testified a number of the elderly investors died during the receivership.

In 2005, the SEC began an investigation into the Millennium Terminal program, and in February 2006, the SEC appointed James Silver as receiver. Silver discovered that, of the more than 4000 terminals sold to investors, only 900 were placed in businesses. Further, the terminals that were working were not making enough to cover the monthly payments to investors. The terminals averaged income of approximately $23-25 per month, but this amount was [less than] what the terminals were supposed to be making at their locations. Silver testified the only source of money to make the payments to investors was new investor funds, making the program a Ponzi scheme. Silver testified the operation involved "money being recycled."

Soneet Kapila, a forensic accountant hired by Silver, testified the Millennium Terminal program had 25,000 "transaction lines" in which money flowed back and forth from the twenty-five Televest companies and the 130 bank accounts associated with them. Kapila testified there was "no real substantive business explanation" for the transactions. Instead, the transactions were a money-laundering technique to obscure the source of the funds. Over three years, Televest took in nearly $23 million, but the source of more than $22 million, or 97% of those funds, were investors. Only approximately $203,000 came from the terminals. Nevertheless, appellant took approximately $6 million for himself and family members. Silver testified that, at the conclusion of the receivership, he liquidated the assets of appellant's companies and was only able to pay investors ten cents on the dollar; a "little over" $1.6 million to all investors.

*Digges*, 2012 WL 2444543, at *1-2.

## Standard of Review

Title 28 U.S.C. § 2254 authorizes the District Court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner demonstrates he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The Court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision based on

3

an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a materially indistinguishable set of facts. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id*. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *Id*. at 409-11. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. The Supreme Court has noted that this standard is difficult to meet "because it was meant to be." *Id*.

This Court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.").

Analysis

*Violation of Commerce Clause*

Petitioner contends his prosecution for a securities offense by the State of Texas violated the Commerce Clause of the United States Constitution. He states his prosecution impermissibly discriminated against interstate commerce because it sought to control conduct beyond the

4

boundaries of the state. He states the Commerce Clause prevents a state from applying its statutes to activities that take place wholly outside its borders, even if the activities have effects within its borders.

Petitioner asserted this ground for review on direct appeal. In finding the ground for review to be without merit, the intermediate appellate court stated as follows:

> In his fourth issue, appellant argues his prosecution for a securities regulatory offense in Texas was in contravention of the U.S. Constitution's commerce clause. Specifically, appellant argues prosecution under the Texas Securities Act (TSA) "discriminates against interstate commerce" because it seeks to control conduct beyond the boundaries of the State of Texas. Appellant's argument ignores the fact the indictment alleged appellant committed fraud, directly and through agents, in connection with the sale or offer to sell securities in Texas. The TSA applies if any act in the selling process of securities covered by the Act occurs in Texas.

*Digges*, 2012 WL 2444543, at * 4 (citations omitted).

The indictment alleged that petitioner, directly and through agents, committed fraud in connection with the sales and offers of sale of securities. The indictment further alleged that this occurred in Collin County, Texas. In addition, as set forth in the intermediate appellate court's opinion, James Browning, a salesperson employed by petitioner, testified that several of petitioner's salespeople worked in Texas and some made sales in Collin County. As petitioner's conviction was based on actions taken by his agents within the State of Texas, it cannot be concluded his prosecution violated the Commerce Clause. In prosecuting petitioner, the State of Texas did not attempt to apply its statute to activities that took place wholly outside its borders, but instead sought to punish conduct that occurred within the state. Accordingly, the rejection of this ground for review by the state court was not contrary to, and did not involved an unreasonable application of, clearly established state law.

*Prosecution Exceeded Court's Territorial Jurisdiction*

Petitioner was convicted of violating Article 581-29(C) of the Texas Revised Civil Statutes Annotated. This article makes it illegal for a person to, in connection with the sale or offering for sale of any security: (1) engage in any fraud or fraudulent practice; (2) employ any device, scheme or artifice to defraud; (3) knowingly make any untrue statement of material fact or (4) engage in any

5

act, practice or course of business that operates as a fraud or deceit upon any person. Petitioner describes this statute as being conduct oriented, rather than results oriented. He contends the state court lacked territorial jurisdiction over his offense. He states that before he surrendered himself to authorities in Collin County on December 8, 2008, he had not been in Texas for more than 20 years. Petitioner contends that his alleged failure to disclose certain information to prospective buyers was an omission that occurred, if at all, in Maryland. He states that he, as a resident of Maryland did not solicit any Texas resident to buy a security. As a result, he was never the seller of a security in Texas and never engaged in any illegal conduct within the state.

> In rejecting this ground for review, the intermediate appellate court stated as follows:
>
> The term "jurisdiction" refers to the power of a court to hear a controversy and make decisions that are legally binding on the parties involved. Section 1.04(a)(1) of the penal code provides for territorial jurisdiction "if either the conduct or result that is an element of the offense occurs inside this state."
>
> Regarding territorial jurisdiction, the indictment alleged appellant "directly and through agents," committed fraud in connection with the sale or offering for sale of securities. An individual may be charged as a party to an offense and may be held criminally responsible for the conduct of another when that individual acts in concert with another person in committing an offense. The indictment contains nearly five pages listing individuals in Collin County, Texas, who appellant, directly and through agents, attempted to sell and to whom he offered for sale the Millennium Terminal Investment Program. The indictment alleged this involved the sale or offer to sell a security, and appellant committed fraud in the sale or offer to sell a security as enumerated in sixteen paragraphs. Accordingly, the trial court had territorial jurisdiction over this matter.

*Digges*, 2012 WL 2444543, at *3-4 (citations omitted).

As the intermediate appellate court observed, petitioner was prosecuted under a "law of the parties" theory. Section 7.01 of the Texas Penal Code provides that a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another person for whom he is criminally responsible, or both. Petitioner's conviction was not based on the allegation that he fraudulently sold or offered to sell securities in Texas. Instead, the conviction was based on the allegation that persons for whom petitioner was criminally responsible fraudulently sold or offered to sell securities in Texas. As the actions of these persons occurred in Texas, the state court had territorial jurisdiction over the offense under Section 1.04(a)(1) of the

6

Texas Penal Code. Accordingly, the conclusion by the state courts that they had territorial jurisdiction over petitioner's offense was not contrary to, and did not involve an unreasonable application of, clearly established federal law.[1]

*Actual Innocence*

Finally, petitioner asserts he is actually innocent of committing securities fraud. However, a claim of actual innocence does not constitute a basis for federal habeas relief absent an independent constitutional violation occurring in the underlying criminal proceeding. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact." *Id*. As petitioner has not demonstrated there were any constitutional deficiencies in his state proceeding, his assertion of actual innocence does not provide him with a basis for relief.

## Conclusion

Petitioner's assertion of actual innocence does not provide him with a basis for relief in this proceeding. Further, he has failed to demonstrate that the rejection by the state courts of his remaining grounds for review was contrary to, or involved an unreasonable application of, clearly established federal law. He is therefore not entitled to relief. It is accordingly

**ORDERED** that the petition for writ of habeas corpus is **DENIED** and petitioner's case is **DISMISSED** with prejudice. An appropriate final judgment shall be entered.

In addition, the Court is of the opinion petitioner is not entitled to a certificate of appealability. An appeal form a judgment denying federal habeas corpus relief may not proceed unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253. The standard for granting a certificate of appealability requires a petitioner to make a substantial showing of the denial of a

---

[1] In addition, this ground for review does not entitle petitioner to relief in this proceeding because it is based solely on an assertion that the conviction violated state law. Petitioner asserts that the state court never had territorial jurisdiction over his offense as required by Section 1.04 of the Texas Penal Code. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The state courts have already considered and rejected this ground for review, and it is not the function of a federal habeas court "to review a state's interpretation of its own law." *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

federal constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Elizalde v. Dretke*, 363 F.3d 323, 328 (5th Cir. 2004). To make a substantial showing, a petitioner need not establish that he should prevail on the merits. Instead, he must demonstrate that the issues are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to proceed further. *Slack*, 529 U.S. at 483-84. Any doubt regarding whether to grant a certificate of appealability should be resolved in favor of the petitioner and the severity of the penalty may be considered in making this determination. *See Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000).

In this case, petitioner has not shown that any of the issues raised are subject to debate among jurists of reason. The factual and legal questions presented are not novel and have been consistently resolved adversely to his position. Further, the questions presented are not worthy of encouragement to proceed further. As a result, a certificate of appealability shall not be issued in this matter.

**SIGNED this 19th day of September, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE